UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WAYNE TORCIVIA,

                             Plaintiff,                        *SUA SPONTE*
                                                                      **REPORT AND**
                                                                       **RECOMMENDATION**
          -against-                                          CV 15-1791(LDH) (GRB)

MARY CATHERINE SMITH, individually,
*et al.*

                             Defendants.
-----------------------------------------------------------X

**BROWN, Magistrate Judge:**

       Plaintiff Wayne Torcivia ("plaintiff") seeks monetary damages from a panoply of defendants, including the County of Suffolk ("County"), numerous police officials and officers (both identified and unidentified) and several medical professionals purportedly associated with the Stony Brook University Hospital ("SBUH"), including the defendant Mary Catherine Smith ("Smith"). The action arises from, *inter alia*, plaintiff's arrest following an (allegedly false) complaint of abuse filed by his daughter (whom the complaint describes as "mentally ill"), his temporary detention at the SBUH "Comprehensive Psychiatric Emergency Program" ("CPEP") Unit and the subsequent requirement that he surrender certain firearms. This *sua sponte* Report and Recommendation examines the allegations and factual record developed thus far against defendant Smith, who was, at the relevant time, an unpaid social work student intern. Because the allegations of the lack any suggestion of actionable conduct by Smith, and continuing this action against her will result in unnecessary costs, expense and inefficiency, it is respectfully recommended that this action be dismissed without prejudice as against defendant Smith.

1

## BACKGROUND

**Procedural History**

The instant action was commenced by the filing of a complaint on April 2, 2015. Complaint, DE [1]. The complaint describes Smith as "at all times relevant herein, [] a social worker / medical personnel and/or health care professional employed by and/or acting as an agent of Stony Brook University Hospital, a state agency." DE 1, ¶16. After so identifying her, the detailed complaint, which runs 36 pages, does not mention Smith by name in any of its 212 paragraphs of factual allegations or the causes of action that follow. By including her in the summary appellation "defendant medical personnel" together with more than a score of other defendants, both identified and unidentified, the complaint suggests that she had some unspecified involvement, in sum and substance, in determining that plaintiff was not mentally ill, but then illegally continuing his confinement until he agreed to surrender certain firearms. DE 1 at ¶¶ 92-106. Based solely on these conclusory allegations, Smith is included – again because of having been designated as part of the group defined as "summary medical personnel" – in seven of the 16 causes of action, most of which allege constitutional violations.

During the litigation, several other pertinent facts emerged. First, as is now undisputed, Smith was not, as set out in the complaint, "a social worker / medical personnel and/or health care professional employed by and/or acting as an agent of [SBUH]." Rather, she was a student of social work at CPEP in the capacity of an unpaid social work intern. At the June 30, 2016 settlement conference (and perhaps earlier), the parties and the Court was made aware that because of her status as a former student intern, Smith was not indemnified by SBUH, and had to bear the costs of defending this action at her own expense. As such, the undersigned suggested that that plaintiff consider discontinuing the action without prejudice as against Smith, which

counsel took under advisement, but never advised the Court as to its resolution.

Because of the complex nature of the action, the substantial rights at issue, the number of parties and certain discovery complications (including the production of records involving psychiatric examinations, privacy issues concerning third parties, etc.), this matter has continued to be vigorously litigated. Among the discovery issues that arose, plaintiff subpoenaed Smith's personnel file from SBUH. A motion to quash followed, which plaintiff opposed on largely procedural grounds. DE 38-39, 41. Those records were arguably subject to certain privacy interests, and plaintiff failed to articulate the expected relevance of the records. Nevertheless, following an *in camera* review, DE 42, the undersigned directed the production of those records on an "attorney's eyes only" basis. DE 47. This accommodation was provided to allow counsel to consider these records, which help establish that (1) Smith was an exemplary student intern with no history of similar (or for that matter any) complaints and (2) Smith clearly lacked the authority to effect the kind of conduct alleged in the complaint. As such, counsel was ordered "to file a status letter apprising the Court of its intentions regarding voluntary dismissal as to Smith," and, upon deciding to continue the action, to show cause why a report and recommendation by the undersigned should not be issued *sua sponte* recommending dismissal without prejudice should not be entered. DE 47.

In response, plaintiff's counsel filed a letter indicating that plaintiff would not voluntarily dismiss against Smith, primarily because discovery is not yet completed in the action. *See generally* DE 54. ("I request that the Court allow the subject to be revisited at the close of fact discovery. Certainly, if there is no legal basis upon which to proceed against defendant Mary Catherine Smith, it is not my intention to force her attorney to unnecessarily proceed with a motion for summary judgment"). Some of the facts cited by plaintiff's counsel support the

notion that Smith, as an unpaid student intern, could not possibly have ordered the detention or release of the defendant from the CPEP unit. *Id*. ("Testimony from state defendant D'Anna revealed that Dr. Yacoub is the only individual who can make the decision to discharge a patient from Stony Brook CPEP"). Of course, common sense warrants the same conclusion.

## DISCUSSION

Rule 1 of the Federal Rules of Civil Procedure mandates that those ruled be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 89 (E.D.N.Y.), *report and recommendation adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012). As such, district courts are empowered to dismiss actions *sua sponte*, particularly where, as here, plaintiff has been provided with notice and an opportunity to be heard. As the Second Circuit has held:

> district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources. Accordingly, we hold that district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee, just as the Court of Appeals may dismiss frivolous matters in like circumstances.

*Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 364 (2d Cir. 2000).

Nothing in this R&R should be construed to suggest that Torcivia's action, on the present record, is frivolous. However, as to defendant Smith, the allegations do not pass muster. The "conclusory nature" of plaintiff's allegations as to Smith "disentitles them to the presumption of truth" when considering dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81(2009). Indeed, as in *Iqbal*

> petitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic. Yet respondent's complaint does not

> contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8.

*Id.* With respect to plaintiff's constitutional claims, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 66–67 (2d Cir. 2016).

Going beyond the insufficient allegations of the complaint, the factual record developed to date further undermines plaintiff's claims against Smith. Contrary to the allegations, she was an unpaid student intern without authority to order plaintiff's detention or release, which undercuts his unlawful confinement claim against her. Notwithstanding the opportunities provided, counsel has been unable to articulate a good faith basis to maintain this action against her. Counsel's objection that she has not yet been deposed is unavailing, as Smith will be available for deposition, *see* DE 56, and a dismissal without prejudice would permit the filing of an amended complaint against her should discovery so warrant.

Finally, the revelation that Smith is unindemnified raises an entirely different concern regarding fairness. As former Chief Judge Jacobs held in an *in banc* dissent joined by four other Second Circuit judges, Section 1983 jurisprudence is increasingly premised on the

> tacit assumption that [the caseworker] Mr. Woo is merely a nominal defendant, that the City of New York will take on his defense and indemnify him for any judgment, and that litigation like this is not really a claim against the individual but is in effect an instrument for developing ever more ramified constitutional principles and for policing governmental compliance with these constitutional developments . . .
>
> An individual defendant has at stake his savings, his pension, the equity in his home, the kids' college fund: This should tell us something about the threshold of liability . . .
>
> The premise—that a suit against an individual government employee is in substance a suit against his employer—is also wrong. In the City of New York

> (and doubtless in some other political subdivisions of this Circuit), the government supplies defense counsel and pays the judgment . . . But this Circuit includes scores of counties and hundreds of towns and municipalities; and there are thousands of political subdivisions in the nation. Not all of them will indemnify their employees for Section 1983 judgments; many cannot even afford to furnish a defense; some can barely keep the school open. Counterparts to Mr. Woo, who are employed elsewhere, face ruin and bankruptcy in Section 1983 cases

*Southerland v. City of New York,* 681 F.3d 122, 137-8 (2d Cir.2012). In addition, "the disruption, inconvenience and scrutiny that accompany civil litigation can have serious impact on individual defendants, including in such matters as career advancement, applying for a new position or obtaining loans." *Anaba v. Cty. of Suffolk,* No. 11-CV-1987 (ADS)(GRB), 2014 WL 1411770 at *12 (E.D.N.Y. Apr. 11, 2014). These concerns seem applicable to the case against Smith.

Discontinuing this action as against Smith without prejudice serves these principles and the interests of justice. The unidentified and hypothetical "prejudice" from a dismissal cited by plaintiff's counsel, see DE 54 at 3, is far outweighed by the actual economic harm faced by Smith as well as the inefficiencies to the parties and the Court.

## CONCLUSION

Based on the foregoing, it is respectfully **RECOMMENDED** that this action be dismissed without prejudice as to defendant Smith.
.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically distributed to the representatives of each of the parties. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service

of this Report.  28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.**  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York  **SO ORDERED:**
December 23, 2016

 /s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge